BRYAN, Justice.
,The Retirement Systems of Alabama (“RSA”), the Teachers’ Retirement System of Alabama (“TRS”), the Public Education Employees’ Health Insurance Plan (“PEE-HIP”), the Public Education Employees’ Health .Insurance, Fund (“PEEHIF”), the Board, of Control, of TRS (“the TRS Board”), the Board of Control of PEEHIP (“the PEEHIP Board”), David G. Bronner, as chief executive officer of RSA and as secretary-treasurer of TRS and PEEHIP, and various members of the TRS Board and of the PEEHIP Board in their official capacities[1] (hereinafter collectively referred to as “the PEEHIP defendants”) seek mandamus review of the Montgomery Circuit .Court’s denial of their motion to dismiss the claims filed against them by James B, Burks II, Eugenia Burks, Martin A. Hester, Jacqueline Hester, Thomas Highfield, Carol Ann Highfield, Jake Jackson, and Melinda Jackson, individually and on behalf of a class of similarly situated individuals (hereinafter collectively referred to as “the public-education plaintiffs”). ■ .
For the reasons set forth herein, the petition is- granted in part and- denied in part and a writ is issued directing the *530 Montgomery Circuit Court to dismiss all the public-education plaintiffs’ claims against RSA, PEEHIP, the PEEHIP Board, PEEHIF, TRS, the TRS Board, the members of the TRS Board, and Bron-ner, in his capacity as chief executive officer of RSA and as secretary-treasurer of TRS; to dismiss all the public-education plaintiffs’ state-law claims against the members of the PEEHIP Board and Bronner, in his capacity as secretary-treasurer of PEEHIP; and to dismiss the public-education plaintiffs’ claims against the members of the PEEHIP Board and Bronner, in his capacity as secretary-treasurer of PEEHIP, for monetary relief, pursuant to § 1983. The petition is denied with regard to the public-education plaintiffs’ claims for injunctive relief, pursuant to § 1983, - against the members of the PEEHIP Board and Bronner, in his capacity as secretary-treasurer of PEEHIP.

Facts and Procedural History

PEEHIP, which is managed by the PEEHIP Board, provides group health-insurance benefits to public-education employees in Alabama. Each year, the PEE-HIP Board submits “to the Governor and to the Legislature the amount or amounts necessary to fund coverage for benefits authorized by this article for the following fiscal year for employees and for retired employees as a monthly premium per active member per month.” § 16-25A-8(b), Ala.Code 1975. That monthly premium is paid by employers for each of their active members (“the employer contribution”). See § 16-25A-8(a), Ala.Code 1975.
In addition, “[e]ach employee and retired employee [is] entitled to have his or her spouse and dependent children, as defined by the rules and regulations of the [PEEHIP] board, included in the coverage provided upon agreeing to pay the employee’s contribution of the health insurance premium for such dependents.” ■ § 16-25A-8(e), Ala.Code 1975. Section. 16-25A-l(8), Ala.Code 1975, provides, in pei’tinent part, that “[i]ndividual premiums may include adjustments and surcharges for ... family size including, but not limited to, a husband and wife both being covered by a health insurance plan as defined herein.” The employer contribution, as well as “all premiums paid by employees and retired employees under the provisions of this section and any other premiums paid under the provisions of this article,” are deposited into PEEHIF. § 16-25A-8(f), Ala. Code 1975.
In May 2014, the public-reducation plaintiffs, who are all public-school educators and PEEHIP participants married to other public-school educators and PEEHIP participants and who have dependent children, sued the PEEHIP defendants, alleging:
“Until 2009, each participating educator in each school system received the full allotment provided by them employer [(i.e., the employer contribution)], regardless of marital status. For example, under the pre-2009 policy, a husband and wife in the public school system in 2013 would have each received an allotment of $714 for a total of $1428 to spend on health insurance. Accordingly, the couple would have no out-of-pocket costs for health insurance.
“However, in 2009, [the PEEHIP defendants] implemented a policy whereby a wife and husband who are both educators in the public school system and who have dependent children would receive a single allotment, rather than two. Based on this policy, two educators who are married to each other and who have dependent children received a single allotment of $714 rather than each receiving an individual allotment of $714.
“Accordingly, since 2009 public school educators who are married to another Alabama educator and who have dependent children have been required to pay *531 out-of-pocket for any health insurance expenses that exceed the amount of an -individual allotment. Therefore, rather than having no out-of-pocket costs for health insurance, the couple has-to contribute $177 of their own money each month for health insurance. Moreover, educators who are married to each other are not permitted to. utilize the second allotment toward the purchase of the four optional plans or the supplemental medical plan. In effect, one' of the spouses receives no insurance benefit whatsoever.
“On the other hand, every single educator, every married educator whose ■spouse is not employed by a school system and every married educator who does not have dependent children continues to receive individual allotments. Therefore, in 2013. every public school educator in Alabama — other than [the public-education plaintiffs] and Class Members — received ⅜ monthly allotment of $714 .for insurance benefits. If an . educator’s spouse works outside the public school system and the educator is covered on the spouse’s health plan, the educator can utilize his or her allotment to purchase the four optional plans with no out-of-pocket cost.”
The public-education plaintiffs alleged that the policy adopted by the PEEHIP Board in 2009 (“the 2009 policy”) violated Article V, § 138.03, Alabama Constitution of 1901,[2] as well as the public-education plaintiffs’ rights to equal protection, due process, and freedom of association under the Alabama Constitution, the United States Constitution, and 42 U.S.C. § 1983. The public-education plaintiffs also alleged that the 2009 policy violated Alabama public policy and their right to family integrity as protected by the Alabama Constitution. The public-education plaintiffs sought relief in the form of (1) a judgment declaring “[the PEEHIP defendants’] practice of denying an allotment for insurance benefits to educators who are married to another educator and who have dependent children to be unconstitutional, discriminatory and unlawful under both State and Federal law”; (2) an injunction preventing the PEEHIP defendants from “denying an allotment for insurance benefits to educators whose spouse is also an educator in the public school system and who have dependent children”; (3) restitution of “amounts ... unlawfully withheld and/or ... amounts [the public-education plaintiffs] have paid for insurance that they would not have paid absent [the- PEEHIP defendants’] unlawful conduct” or other equitable relief; and (4) costs and attorney fees.
The PEEHIP defendants -moved the circuit court, pursuant to Rules 12(b)(1) and 12(b)(6), Ala. R. Civ, P., to dismiss the public-education plaintiffs’ complaint, arguing, among other things, that the claims against them were barred by the doctrine of sovereign immunity. The circuit court denied the motion to dismiss, and the PEEHIP defendants have petitioned this Court for -mandamus relief from that order.

Analysis

“It is well established that mandamus will lie to compel the dismissal of a *532 claim that is barred by the, doctrine of sovereign immunity.” Ex parte Blankenship, 893 So.2d 303, 305 (Ala.2004).
“As this Court has consistently held, the writ of mandamus is a ’ "
“ ‘ “drastic and extraordinary1 writ that will be issued only when there is: 1) á clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal’to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction , of the court.” ’
“Ex parte Wood, 852 So.2d 705, 708 (Ala.2002) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). ‘ “In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review_”’ Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 57 (Ala.2006) (quoting Ex parte Haralson, 853 So.2d 928, 931 (Ala.2003)).
“‘In Newman v. Savas, 878 So.2d 1147 (Ala.2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“1 “A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993), This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285; 288 (Ala.2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.”
“ ‘878 So.2d at 1148.’
“Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala.2005). We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff.- Drummond Co., 937 So.2d at 58.”
Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 20-21 (Ala.2007).
I. Claims Against RSA,. PEEHIP, the . PEEHIP Board, PEEHIF, TRS, the TRS Board,■ Members of the TRS Board, and Bronner, in His Official Capacity as Chief Executive Officer of RSA and Secretary-Treasurer of TRS
The -public-education plaintiffs, have agreed to voluntarily dismiss their claims against RSA, PEEHIP, the PEEHIP Board, PEEHIF, TRS, the TRS Board, and Bronner, in his capacity as chief executive- officer of RSA and as secretary-treasurer of TRS, stating:
“[The PEEHIP] [defendants concede in their petition that the PEEHIP Board has the authority to grant the [public-education] [plaintiffs the relief they seek- in this action_ Because the [PEEHIP] Board can act only at the direction of the Members of the PEE-HIP Board and through its officers, the Members of the PEEHIP Board and PEEHIP’s officers ... necessarily have -the authority to direct the [PEEHIP] Board to provide [the public-education] [plaintiffs the benefits to which they are entitled. With this concession, [the public-education] [plaintiffs are willing to voluntarily dismiss their claims against RSA, PEEHIP, the PEEHIP Board, PEEHIF, TRS, and the TRS Board and to proceed with their claims against the members of the PEEHIP Board and PEEHIP’s officers.”[3]
*533 Public-education plaintiffs’ brief, at 1. Therefore, the petition for mandamus relief is granted in this regard, and the circuit court is instructed to dismiss all the claims against RSA, PEEHIP, the PEE-HIP Board, PEEHIF, TRS, the TRS Board, the members of the TRS Board, and Bronner, in his capacity as chief executive officer of RSA and as secretary^ treasurer of TRS. However, because the arguments in the petition for the writ of mandamus were made by the PEEHIP defendants, we continue to use that term when discussing those arguments.

II. State-Law Claims Against 'the Members of the PÉEHIP Board and Bron-ner, in His Capacity as Secretary-Treasurer of PEEHIP

The PEEHIP defendants argue that the public-education plaintiffs’ claims against the members, of the PEEHIP Board and Bronner, as secretary-treasurer of PEEHIP, are barred by Art. I, § 14, Alabama Constitution of 1901.' “The wall of immunity erected by § 14 is nearly impregnable., This immunity may not be waived.' ‘This means not only that the [Sjtate itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, wherí a result favorable to plaintiff would be directly to affect the financial status of the state treasury.’ ” Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002) (quoting State Docks Comm’n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (citations omitted)). “This Court has held that the immunity afforded1 by § 14 applies to instrumentalities of the State and State officials sued in their official capacities when such an action is effectively an action against the State.” Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 332 (Ala.2011).
This Court has recognized six categories of actions that survive the § 14 bar¡' (1) actions to compel State officials to perform their legal duties, Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 679 (1971); (2) actions to enjoin State officials from, enforcing an unconstitutional law, id.; (3) actions to compel State officials to perform ministerial acts, 287 Ala. at 229-30, 250 So.2d at 678-79; (4) actions. under the Declaratory Judgment Act, § 6-6-220 et seq., Ala.Code 1975, seeking construction of a statute and how it applies in a given situation, 287 Ala. at 230, 250 So.2d at 679; (5) valid inverse-condemnation actions brought against,State officials in their representative capacities, Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006); and (6) actions, to enjoin State officials from acting fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Ex parte Moulton, 116 So.3d 1119, 1141 (Ala.2013).[4] This Court has also noted that “ ‘an action *534 is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiffs recovery of money from the [S]tate.’ ” Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004) (quoting Shoals Cmty. College v. Colagross, 674 So.2d 1311, 1314 (Ala.Civ.App.1995)).
The PEEHIP defendants argue that" the public-education plaintiffs’ claims here do not fall within any of the six categories of actions that survive the bar of § 14 and are, therefore, barred by the doctrine of sovereign immunity. We agree.
The parties agree that the fifth category — valid inverse-condemnation actions— does not apply in this case; However, the public-education plaintiffs argue that they have requested injunctive relief, pursuant to the first, second, and sixth categories of actions permitted by § 14 against State officials in their official capacities. They argue:
“[The PEEHIP defendants] have designed and implemented a constitutionally impermissible classification system for allotting health insurance funds to public educators’ in the State of Alabama. : The [public-education plaintiffs] therefore seek to enjoin the [members of the PEEHIP Board and Bronner] in their representative capacities from enforcing this unconstitutional policy, to perform their legal duties and to correct their mistaken interpretation of law.”
Public-education plaintiffs’ brief, at 11-12.
This Court has stated that “the ‘legal-duty exception applies only where a law, a regulation, or á validly enacted internal rule commands a specific course of conduct.” Rodgers v. Hopper, 768 So.2d 963, 968 (Ala.2000). The public-education plaintiffs have not identified — either in their complaint or in their brief to this Court — any law, regulation, or internal rule that, they argue, creates a legal duty for the PEEHIP Board to allow the public-education plaintiffs access to the employer contribution paid on their behalf to spend on health insurance or “that could serve as a basis for our holding this lawsuit against the [members of the PEEHIP Board and Bronner] to be authorized by this exception.” Id., at 969.
Similarly, the public-education plaintiffs have not identified an allegedly unconstitutional law being enforced by the members of the PEEHIP Board and Bronner, as secretary-treasurer of PEEHIP. The public-education plaintiffs have alleged that the 2009 policy is unconstitutional in its application because it creates a distinction between benefits offered to couples both of whom are public-education employees and who have dependant children, on the one hand, and other public-education employees, on’ the other. However, the public-education plaintiffs have made no argument and cited no authority indicating that such a policy constitutes an “unconstitutional law” for purposes of the second cátegory of actions permitted by § 14.
Finally, the public-education plaintiffs have not identified in their complaint or their brief to this Court any law the PEE-HIP Board allegedly mistakenly interpreted or construed in adopting or implementing the 2009 policy.[5] Instead, they argued *535 that the 2009 policy unlawfully deprived them of a benfefit to which they were entitled. Again, however, they have not identified a legal basis on which they are entitled to that benefit. Thus, .their claims are not authorized under the sixth category of actions permitted by § 14.[6]
The public-education plaintiffs have also requested declaratory relief, “askfing] that th[e] [circuit] [c]ourt determine and adjudge that [the public-education .plaintiffs] and Class Members are entitled to the same benefits as other public educators” and that “the [circuit] [c]ourt enter an Order declaring [the PEEHIP defendants’] practice of denying an allotment for insurance benefits to educators- who are married to another educator and who have dependent children to be unconstitutional, discriminatory and unlawful.” However, this request for declaratory relief relates to the PEEHIP defendants’ conduct under the 2009 policy, not to the PEEHIP Board’s performance under any particular statute the public-education plaintiffs now seek to have construed or “applie[d] in a given situation.” Aland, supra. Thus, the request for declaratory relief does not fall within the categories of actions against State, officials in their official capacities permitted under § 14.[7]
The public-education plaintiffs also argue that they “seek an order compelling State officers in their representative capacities to. perform ministerial acts,” public-education plaintiffs’ brief, at 13, i.e., to *536 pay the public-education plaintiffs “restitution for the amounts the [PEEHIP defendants] have unlawfully withheld and/or for the amounts [the public-education] plaintiffs have paid for insurance that they would not have paid absent [the PEEHIP defendants’] unlawful conduct.” “‘It is settled beyond cavil that. State officials cannot be sued for damages in tlieir official capacities.’ ” Ex parte Montgomery Cnty. Bd. of Educ., 88 So.3d 837, 842 (Ala.2012) (quoting Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 132-33 (Ala.2002)). Moreover, as noted previously, “an action is one against the [S]tate when a result favorable for the plaintiff would ... result in the plaintiffs recovery of money from the [S]tate.” Jones, 895 So.2d at 873 (emphasis omitted). See also Ex parte Moulton, 116 So.3d at 1132 (“Teplick concedes that his claims against the petitioners in their official capacities seeking monetary damages,' including backpay, ‘front’ pay, and an attorney fee, are barred by § 14.”).
The public-education, plaintiffs argue:
“[The] request for .incidental monetary relief is not barred by sovereign immunity because the Court may order State officers to pay the predetermined amount as a ministerial duty. [Alabama Dep’t of Transp. v.] Harbert [Int’l, Inc.], 990 So.2d [831] at 845 [ (Ala.2008) ]. ‘[Although the payment of the funds “may ultimately touch the State treasury,” the payment does not “affect the financial status of the State treasury,” because the funds “do not belong to the State,” and the State treasury “suffers no more than it would” had the State officers originally performed their duties and paid the debts.’ Id., at 845-46 (citations omitted). Should, [the public-education plaintiffs] prevail in. this action and be awarded restitution, the financial status of the State treasury will likewise suffer no more than if the [PEEHIP Board] had performed [its] legal duty and allotted [the. ¡public-education plaintiffs] the amounts to which they were statutorily and constitutionally entitled.”
Public-education plaintiffs’ brief, at 13-14.
The public-education plaintiffs’ reliance on Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831 (Ala.2008), in this regard is misplaced. In Harbert, this Court addressed, among other things, whether Harbert International, Inc. (“Harbert”), could maintain an action against the Alabama Department of Transportation (“ALDOT”), seeking, among other things, (1) the return of liquidated damages withheld under an allegedly unlawful provision of Harbert’s-contract with ALDOT, (2) $291,750 of a retainage ALDOT owed under the contract, and (3) compensation for extra work Harbert had performed tinder the contract/ This Court noted that “mandamus relief is. available in certain situations to compel a State officer to perform the ministerial act of tendering payment of liquidated or certain sums the State is legally obligated to pay under a contract.” Harbert, 990 So.2d at 842. We went on to affirm the circuit court’s judgment insofar as it required ALDOT to pay Harbert the liquidated damages and retainage owed under the contract but reversed the judgment insofar as it directed the payment to Harbert of unliquidated damages for .its breach-of-contract claim.
Although the public-education plaintiffs argue that the restitution they are requesting is not “compensatory or unliqui-dated damages” and is “an amount known to [the PEEHIP defendants],” public-education plaintiffs’ brief, at 14, the restitution requested in this case is more in the nature of a refund of amounts overpaid .than a request for liquidated or certain damages owed under contract. This Court has determined that such claims are Barred by § 14.
*537 In Poiroux v. Rich, 150 So.3d 1027, 1037 (Ala.2014), this Court addressed whether an action against State officials in their official capacities requesting a refund of fees paid under allegedly unconstitutional portions of § 12-49-311, Ala.Code 1975, was barred by § 14, stating: “Recovery on those claims ... would ‘affect the financial status of the state treasury,’ Patterson[ v. Gladwin Corp.], 835 So.2d [137,] 143 [ (Ala.2002),] and would ‘ “result in the ... recovery of money . from the [S]tate.” ’ ” (Quoting Jones, 895 So.2d at 873.) Similarly, in Patterson, a taxpayer who had successfully challenged the constitutionality of certain taxes that had been assessed pursuant to § 40-14-40, Ala.Code 1975, brought a class action against the commissioner of the Department of Revenue in his official capacity, seeking a refund of taxes paid under that statute. This Coúrt determined that a judgment in favor of the class in that case “would ‘affect the financial status of the state treasury,’ ” Patterson, 835 So.2d at 143 (quoting State Docks Comm’n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (emphasis omitted)), and that “the Taxpayer’s class action seeking a refund of franchise taxes paid pursuant to Alabama’s invalid statutory scheme is an action against, the State as that concept is expressed in § 14.” Id., at 154.
The public-education - plaintiffs argue that “Alabama courts have held on more than one occasion that actions by employees or officers of the State to recover funds to which they are entitled are not barred by the doctrine of sovereign immunity.” Public-education plaintiffs* brief, at 14. However, none of the cases they rely on in support of that proposition inyolves a request for restitution or a refund of funds allegedly overpaid. In Druid City Hospital Board v. Epperson, 378 So.2d 696 (Ala.1979), this Court addressed the rights of a creditor to garnish the wages of a state employee, Gunter v. Beasley, 414 So.2d 41 (Ala.1982), McMillan v. Lee, 655 So.2d 906 (Ala.1994), and Ex parte Bessemer Board of Education, 68 So.3d 782 (Ala.2011), were actions to compel State officials to perform a ministerial duty, i.e., to pay specific amounts owed by the State under a statute. None of those cases supports a finding that the aspect of this action requesting monetary relief seeks to compel the performance of a ministerial act or otherwise survives the § 14 bar.
. The. public-education plaintiffs also ■ requested .costs and attorney, fees. This Court .has held that “an award of interim attorney fees and expenses impacts the State treasury and divests-it of funds in the very way forbidden by § 14,” Ex parte Town of Lowndesboro, 950 So.2d 1203, 1211-12 (Ala.2006). Thus, the pub: lic-education. plaintiffs’ request for . costs and attorney fees is also barred by § 14.
Because the state-law claims alleged by the public-education plaintiffs in their complaint do not fall within- the categories of actions permitted by § 14, those claims are barred by the doctrine of sovereign immunity. -Therefore, the PEEHIP defendants have demonstrated that they have a clear legal right' to have the state-law claims against the members of the PEEHIP Board and Bronner, in his capacity as secretary-treasurer of PEEHIP, dismissed.
III. Federal Claims 4pwmsi the Members of the PEEHIP Board and Bronner, in His Capacity as Secretary-Treasurer of PEEHIP
The PEEHIP defendants argue that “Eleventh Amendment immunity bars [the public-education ■ plaintiffs’] federal claims.”
.“It is clear ... -that .in the absence of consent a suit in which the State or one of its agencies or departments is named -.as-the defendant, is proscribed by the Eleventh Amendment. This jurisdic *538 tional bar applies regardless of the nature of the relief sought.
“When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself.... The Eleventh' Amendment bars a suit against state officials when ‘the state is the' real, substantial party in interest.’ ”
Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (citations omitted)).
“To ensure the enforcement of federal law, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief.” Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (citations omitted). Claims for monetary relief against State officials in their official capacities are barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (“ ‘[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.’ (quoting Ford Motor Co., 323 U.S. at 464, overruled on other grounds by Lapides v. Board of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002))).
It is undisputed that the members of the PEEHIP Board and Bronner, as secretary-treasurer of PEEHIP, are State officials and that the public-education plaintiffs’ federal claims are asserted against them in their official capacities. The claims for restitution are claims for retroactive monetary relief, and, as noted previously, a judgment in the public-education plaintiffs’ favor on those claims would result in the recovery of money from the State. Therefore, those claims are barred under the Eleventh Amendment. See Edelman, supra. The public-education plaintiffs’ request for injunctive relief, however, is in the nature of prospective injunctive relief (i.e., an order enjoining the members of the PEEHIP Board and Bronner, as secretary-treasurer of PEE-HIP, from continuing to deny them the benefit of the employer contribution). That relief is not barred by the Eleventh Amendment. See Frew, supra. Thus, the PEEHIP ’defendants have a clear legal right to have the federal claims for monetary relief against the members of the PEEHIP Board and Bronner, as secretary-treasurer of PEEHIP, dismissed, but the federal claims for prospective injunc-tive relief remain.
The public-education plaintiffs argue that “[t]he Court should not grant [the PEEHIP defendants’] petition for a writ of mandamus based on ‘Eleventh Amendment Immunity,’ ” because “[the PEEHIP defendants] did not move to dismiss [the public-education plaintiffs’] claims based on ‘Eleventh Amendment Immunity’ in the trial court. A petitioner that fails to raise an issue in the trial court cannot raise the issue for the first time before an appellate court.” .Public-education plaintiffs’ brief, at 16-17. However, the PEEHIP defendants argued in them motion to dismiss that “Alabama courts have also applied sovereign immunity principles and Eleventh Amendment doctrine to bar federal law claims brought in state court,” citing the same cases relied on in their petition for-mandamus relief filed in this Court. Thus, the issue was presented to the circuit court, and, even assuming for the sake of argument that the PEEHIP defendants *539 could not raise Eleventh Amendment immunity for the first time in their mandamus petition, the public-education plaintiffs have not demonstrated that the requested immunity should be denied on that basis.
The public-education plaintiffs also argue that “[t]he Eleventh Amendment does not provide a source of immunity in state courts.” Public-education plaintiffs’ brief, at 17. However, this Court has applied the Eleventh Amendment to bar federal claims brought against State officials in state courts in various contexts. See, e.g., Haywood v. Alexander, 121 So.3d 972, 978 (Ala.2013) (affirming the circuit court’s judgment dismissing § 1983 claims against a sheriff on the basis of Eleventh Amendment immunity); Ex parte Madison Cnty. Bd. of Educ., 1 So.3d 980, 987 (Ala.2008) (addressing whether a local board of education was an “arm of the State” for purposes of Eleventh Amendment immunity from § 1983 claims alleged against it in state court); and Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 439 (Ala.2001) (“We are therefore required to read the Eleventh Amendment as the United States Supreme Court currently interprets it; that is to say, an Alabama state court has no jurisdiction over an action brought under the [Federal Employees’ Liability Act, 45 U.S.C. § 51 et seq.].”). Thus, the public-education plaintiffs have not demonstrated that their claims for monetary relief pursuant to § 1983 are outside the scope of Eleventh Amendment immunity.

Conclusion

As noted previously, the public-education plaintiffs have agreed to voluntarily dismiss all the claims against RSA, PEE-HIP, the PEEHIP Board, PEEHIF, TRS, the TRS Board, members of the TRS Board, and Bronnér, in his capacity as chief executive officer of RSA and as secretary-treasurer of TRS. For the foregoing reasons, we conclude that, pursuant to § 14, the members of the PEEHIP Board and Bronner, in his. capacity as secretary-treasurer of PEEHIP, are entitled to immunity from the public-education plaintiffs’ state-law claims.- The members of the PEEHIP Board and Bronner, in his capacity as secretáry-freasurer of PEEHIP, are also entitled to'Eleventh Amendment immunity on the public-education plaintiffs’ § 1983 claims for monetary relief. The members of the PEEHIP Board and Bronner, in his capacity as secretary-treasurer of PEEHIP, are not" entitled to Eleventh Amendment immunity from the public-education plaintiffs’ claims for prospective injunctive relief under § 1983.
Therefore, the petition is granted in part and a writ of mandamus issued, instructing the circuit court to dismiss all the public-education plaintiffs’ claims against RSA, PEEHIP, the PEEHIP Board, PEEHIF, TRS, the TRS Board, the members of the TRS Board, and Bronner, in his capacity as chief executive officer of RSA and as secretary-treasurer of TRS, and to dismiss ail the public-education plaintiffs’ state-law claims and federal claims for monetary relief against the .members of the PEE-HIP Board and Bronner, in his capacity as secretary-treasurer of PEEHIP. In all other respects, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
STUART, BOLIN, SHAW, and WISE, JJ., concur. .
PARKER, J., concurs specially. '
MOORE, C.J., and MURDOCK, J., concur ip the result.
MAIN, J., recuses himself.

. According to the petition, the same individuals make up both the TRS Board and the PEEHIP Board. The following are the members of both boards named in the underlying action: Tommy Bice, Bill Newton, Young -Boozer, Sarah S. Swindle, Susan Phillips Brown, Sallie Cook (who retired from the TRS, Board in June 2014 and who was replaced by Joe Ward), Luke Hallmark, Susan Lockridge, Russell Twilley, Teresa Harbinson Swindall, John R. Whaley, Charlene McCoy, and C. Ray Hayes.

. Section 138.03 provides:
"All of the assets, proceeds or income of the teachers' ... retirement systems of Alabama, or any successor systems thereto, and all contributions and payments made to such systems to provide for retirement and related benefits thereunder, shall be held, invested as authorized by law, or disbursed as in trust for the exclusive purpose of providing for such benefits, refunds and administrative expenses under the management of the boards of control of the aforementioned retirement systems; and, none of such assets, proceeds, income, contributions or payments shall be used, loaned, encumbered or diverted to or for any other purpose whatsoever.”

. The public-education plaintiffs do not explicitly address whether they are voluntarily dismissing their claims against the members of the TRS Board. However, the public-education plaintiffs do acknowledge that it is the *533 PEEHIP Board1 that has the authority to grant them the relief they seek and that they are proceeding with their claims against the members of the PEEHIP Board and PEE-HIP's officers only. The public-education plaintiffs make no further reference to the members of the TRS Board in their brief to this Court. For these reasons, we conclude that the public-education plaintiffs intended to dismiss the claims against the members of the TRS Board as well.

. We also stated in Ex parte Moulton that § 14 does not bar “actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State.” 116 So.3d at 1141. However, as noted in Ex parte Bronner, 171 So.3d 614, 622 (Ala.2014): "[A]ny action against a State official that seeks only to recover monetary damages against the official 'in [his or her] individual capacity’ is, of course, not an action1 against that person in his or her official capacity and would of necessity fail to qualify as ‘an action against the State’ for purposes of § 14.”

. The public-education plaintiffs’did allege in their complaint that denying them access to the employer contribution to spend on health insurance violated § 138.03, which, they argue, requires that the contributions and payments made on behalf of the public-education plaintiffs be held in trust for the "exclusive purpose of providing benefits” to public-education employees. However, § 138.03 relates to "assets, proceeds or income of [TRS], or any successor systems thereto, and all contributions and payments made to' such systems to provide for retirement and related benefits.” It does not address contributions and payments made to fund PEEHIP .or policies implemented by the PEEHIP Board.

. The public-education employees have not alleged or argued that the PEEHIP Board acted fraudulently, in bad faith, or beyond its authority in adopting and implementing the 2009 policy. See Moulton, supra.

. Relying on this Court’s decision in Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831 (Ala.2008), the public-education plaintiffs argue that their claim for declaratory relief is not barred because they "seek a declaration ‘giving direction and instruction to individual State officers on the interpretation and application of [state and federal] .law.’ ” Public-education plaintiffs’ brief, at 12 (quoting Harbert, 990 So.2d at 841). However, their reliance on this language from Harbert is misplaced. We stated in that case:
“As this Court held in [Ex parte Town of] Lowndesboro, [950 So.2d 1203 (Ala.2006),] ‘[t]he exception afforded declaratory-judgment actions under § 14 generally applies only when the action seeks “construction of a statute and how it should be applied in a given situation,” Aland v. Graham, 287 Ala. 226, 230, 250 So.2d 677, 679 (1971), and not when an action seeks other relief. 950 So.2d at 1211. Early'cases discussing the .declaratory-judgment-action ‘exception’ to § 14 describe the purpose of a declaratory-judgment action as giving direction and instruction to individual State officers on the interpretation and application of law:
“ ‘In State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 633, 11 So.2d 342, 345 (1943), superseded, in part, on other grounds, Ala.Code 1940, tit. 7, § 167 (now Ala.Code 1975, §‘ 6-6-221), we further ex! plained why a declaratory-judgment action is not barred by § 14:
“ ‘ “But we have held that when an officer of the State is confronted with an uncertain problem of what the law means which requires certain acts on his part, or whether the law is valid, and he proposes to pursue a certain course of conduct in that connection, which would injuriously affect the interests of others who contend that he has no legal right thus to act, there is thereby created a controversy between them and the Declaratory Judgments Act furnishes a remedy for either party against the other to declare the correct status of the law. The purpose is to. settle a controversy between individuals, though some of them may be State officers.” ’ ”
Harbert, 990 So.2d at 840-41 (emphasis added).
As noted previously, the public-education plaintiffs have not requested instruction or direction with regard to the meaning, application, or validity of any particular law but have, instead, requested a-judgment declaring the 2009 policy unlawful and unconstitutional. This does not fall within the category of declaratory-judgment actions permitted by § 14.