SHAW, Justice.
This is the second time this dispute related to benefits provided under the Public Education Employees' Health Insurance Plan ("PEEHIP") has come before this Court. See Ex parte Retirement Sys. of Alabama, 182 So.3d 527 (Ala. 2015) (" RSA I"). In the present case, the remaining defendants below,[1] David G. Bronner, as secretary-treasurer of PEEHIP, and the current members of the PEEHIP Board, petitioned this Court, pursuant to Rule 5, Ala. R. App. P., for permission to appeal the trial court's denial of their motion seeking a summary judgment. For the reasons discussed below, we dismiss the appeal.
Facts and Procedural History
In RSA I, we set out the pertinent factual and procedural history as follows:
"PEEHIP, which is managed by the PEEHIP Board, provides group health-insurance benefits to public-education employees in Alabama. Each year, the PEEHIP Board submits 'to the Governor and to the Legislature the amount or amounts necessary to fund coverage for benefits authorized by this article for the following fiscal year for employees and for retired employees as a monthly premium per active member per month.' § 16-25A-8(b), Ala. Code 1975. That monthly premium is paid by employers for each of their active members ('the employer contribution'). See § 16-25A-8(a), Ala. Code 1975.
"In addition, '[e]ach employee and retired employee [is] entitled to have his or her spouse and dependent children, as defined by the rules and regulations of the [PEEHIP B]oard, included in the coverage provided upon agreeing to pay the employee's contribution of the health insurance premium for such dependents.' § 16-25A-8(e), Ala. Code 1975. Section 16-25A-1(8), Ala. Code 1975, provides, in pertinent part, that '[i]ndividual premiums may include adjustments and surcharges for ... family size including, but not limited to, a husband and wife both being covered by a health insurance plan as defined herein.' The employer contribution, as well as 'all premiums paid by employees and retired employees under the provisions of this section and any other premiums paid under the provisions of this article,' are deposited into PEEHIF [Public Education *264 Employees Health Insurance Fund]. § 16-25A-8(f), Ala. Code 1975."
182 So.3d at 530.
According to the plaintiffs, before 2010, each public-education employee participating in PEEHIP "received" an "allotment" to use to obtain health-insurance coverage from PEEHIP. PEEHIP offered a "hospital plan" and a health-maintenance-organization ("HMO") plan, as well as four "optional" plans that provided supplemental health-care coverage. Public-education employees could use their allotments to select from these plans. A married couple, both of whom were public-education employees, would each have their own allotment to use. Additionally, these couples could "combine" their allotments and receive "family coverage," which would also cover their dependent children, without paying a premium for such coverage.
In 2010, the PEEHIP Board began implementing a new policy ("the 2010 policy").[2] According to the plaintiffs, under the 2010 policy, when two public-education employees were married to one another, each could still use his or her allotment to purchase individual coverage or optional, supplemental plans. However, if they had dependents and wanted family coverage, both allotments had to be "combined," and they now had to pay a premium for family coverage. The couple could not use one allotment to purchase family coverage and the other allotment to purchase optional, supplemental plans.
In May 2014, James B. Burks II, Eugenia Burks, Martin A. Hester, Jacqueline Hester, Thomas Highfield, Carol Ann Highfield, Jake Jackson, and Melinda Jackson, individually and on behalf of a class of similarly situated individuals who are all public-education employees and PEEHIP participants married to other public-education employees and PEEHIP participants and who have dependent children, sued Bronner and the individual members of the PEEHIP Board, among other defendants. In their complaint, the plaintiffs challenged the 2010 policy changes and alleged, among other things, that the 2010 policy treated them differently from other public-education employees and PEEHIP participants.
The alleged disparity, as far as this Court can tell from the complaint and other materials in the record, is this: When one spouse in a family is a public-education employee, and thus one allotment is available, that allotment may be used to purchase family coverage, and the family pays the family-coverage premium. When both spouses are public-education employees and wish to purchase family coverage, then both allotments must be used, and the family also pays the family-coverage premium. The couple cannot use one allotment toward the family coverage and use the other allotment to obtain an optional plan. Thus, one of the spouses, it is alleged, is effectively denied the use of an allotment when compared to other public-education employees: The insurance benefits the two married public-education employees receive with both allotments-family coverage-is the same as the insurance benefits a family with one public-education employee receives using one allotment. It also appears that the plaintiffs challenge the fact that, since the 2010 policy changes, they now have to pay premiums for family coverage when, under the prior policy, they could combine their allotments and pay no premiums.[3]
*265 The plaintiffs alleged that the 2010 policy
"violated Article V, § 138.03, Alabama Constitution of 1901, as well as the public-education plaintiffs' rights to equal protection, due process, and freedom of association under the Alabama Constitution, the United States Constitution, and 42 U.S.C. § 1983. The public-education plaintiffs also alleged that the [2010] policy violated Alabama public policy and their right to family integrity as protected by the Alabama Constitution. The public-education plaintiffs sought relief in the form of (1) a judgment declaring '[the PEEHIP defendants'] practice of denying an allotment for insurance benefits to educators who are married to another educator and who have dependent children to be unconstitutional, discriminatory and unlawful under both State and Federal law'; (2) an injunction preventing the PEEHIP defendants from 'denying an allotment for insurance benefits to educators whose spouse is also an educator in the public school system and who have dependent children'; (3) restitution of 'amounts ... unlawfully withheld and/or ... amounts [the public-education plaintiffs] have paid for insurance that they would not have paid absent [the PEEHIP defendants'] unlawful conduct' or other equitable relief; and (4) costs and attorney fees."
RSA I, 182 So.3d at 531 (footnote omitted).
In RSA I, we considered the propriety of the trial court's denial of the defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Ala. R. Civ. P., on the ground of, among other things, the doctrine of State immunity. Noting that the plaintiffs had voluntarily agreed to dismiss some of their claims and further concluding that other claims were barred by State immunity, we granted the petition as to all claims and parties except for the "plaintiffs' claims for injunctive relief, pursuant to § 1983, against the members of the PEEHIP Board and Bronner, in his capacity as secretary-treasurer of PEEHIP." RSA I, 182 So.3d at 530.
Following this Court's decision in RSA I, proceedings resumed in the trial court on the plaintiffs' remaining federal claims against the PEEHIP Board and Bronner (hereinafter referred to collectively as "the defendants") seeking injunctive relief. The defendants filed a motion requesting a summary judgment as to those claims on various grounds. Specifically, the motion contended that PEEHIP participants did not actually receive an allotment of PEEHIP funds in any particular dollar amount; the employer contribution is actually paid by the employer to the Public Education Employees Health Insurance Fund ("PEEHIF"). The defendants argued that PEEHIP participants instead received insurance coverage. Additionally, the defendants argued that the plaintiffs were unable to establish an equal-protection violation because, they argued, the plaintiffs could not show that they were treated differently from other similarly situated individuals because, after the 2010 policy changes, the plaintiffs now pay the same premiums as other PEEHIP participants for similar coverage.[4] Finally, the *266 defendants asserted that, even assuming that the plaintiffs' equal-protection rights were implicated, the 2010 policy changes nonetheless "pass constitutional muster" under the " 'rational basis test.' "[5]
As to the plaintiffs' claims regarding a denial of due process, the defendants contended, among other things, that "the rates of monthly premiums that PEEHIP participants must pay" did not create a property interest that would be protected by due-process rights. In addition, their actions "easily passed the applicable rational basis test" related to a due-process analysis. Finally, the defendants argued that the plaintiffs' allegations did not establish a violation of freedom-of-association rights guaranteed by the First Amendment.
In their opposition to the summary-judgment motion, the plaintiffs argued that the defendants had failed to address their claims. Specifically, although the defendants focused on whether the plaintiffs paid the same premiums as did other participants, that consideration, the plaintiffs said, was irrelevant. Instead, the plaintiffs claimed that they were challenging the loss of the use of an allotment by public-education employees married to public-education employees who desire family coverage. Further, the plaintiffs submitted, among other things, certain PEEHIP publications they maintained demonstrated that, before the 2010 policy changes, they received allotments-referred to in the documents as "allocations"-but that, after the changes, one spouse was denied the use of an allocation/allotment if the couple purchased family coverage to cover dependents.[6] The plaintiffs argued that the defendants' "documents clearly establish that each [public-education employee] earns an 'allocation' for the purchase of insurance" that was being denied to them "for the sole reason that the [public-education employee] has chosen to marry another [public-education employee] and to have children." The plaintiffs alleged that, as a result of the 2010 policy changes, they had been "denied benefits they would have received had they been treated the same" as other PEEHIP participants.[7]
Following subsequent related filings by the parties and a hearing, the trial court denied the defendants' summary-judgment motion. The defendants filed a "motion for reconsideration," arguing that the only remaining issue was a legal question and seeking permission to take an interlocutory appeal pursuant to Rule 5, Ala. R. App. P. The trial court denied the defendants' request to "reconsider" but granted them permission to appeal based on its conclusion that "[a]n immediate appeal from said Order would materially advance the ultimate termination of the litigation." The defendants then filed a petition for permission to appeal in this Court, which we granted.
Discussion
"This Court has stated the following with regard to permissive appeals:
*267 " 'In the petition for a permissive appeal, the party seeking to appeal must include a certification by the trial court that the interlocutory order involves a controlling question of law, and the trial court must include in the certification a statement of the controlling question of law. Rule 5(a), Ala. R. App. P. In conducting our de novo review of the question presented on a permissive appeal, "this Court will not expand its review ... beyond the question of law stated by the trial court. Any such expansion would usurp the responsibility entrusted to the trial court by Rule 5(a)." BE & K, Inc. v. Baker, 875 So.2d 1185, 1189 (Ala. 2003)....'
" Alabama Powersport Auction, LLC v. Wiese, 143 So.3d 713, 716 (Ala. 2013)."
Northstar Anesthesia of Alabama, LLC v. Noble, 215 So.3d 1044, 1047 (Ala. 2016).
Here, the trial court certified the following controlling question of law:
"Whether given the undisputed facts the Defendants violated Plaintiffs' constitutional rights under the Equal Protection Clause, the Due Process Clause, or the First Amendment, by requiring Plaintiffs to pay the same health insurance premiums as other PEEHIP participants and by not 'allotting' a specific amount of PEEHIP funds to each PEEHIP participant individually?"
The question, viewed in the context of the arguments below, addresses in two ways the constitutionality of the 2010 policy when public-education employees married to public-education employees opt for family coverage: (1) the constitutionality of the requirement that the plaintiffs pay a premium for that coverage, and (2) the constitutionality of the failure to allot one spouse a "specific amount of PEEHIP funds."
A. Constitutionality of the premiums
First, the plaintiffs claim that the certified question, by stating the issue in terms of whether the plaintiffs' rights were violated by requiring the payment of the "same" premium, misstates the issue. Specifically, as detailed above, the plaintiffs argued in the trial court that they were not challenging the premiums but, instead, the denial of an allotment. At the hearing on the motion for a summary judgment, counsel for the plaintiffs stated:
"[Counsel for the defendants] says the issue is, do plaintiffs have a federal constitutional right to pay lower premiums for health insurance benefits than other PEEHIP participants? That's not the issue. That's not what we say. That is not what we have said in our complaint. That is not what we said in the Motion to Dismiss. That's not what we said in our brief that we filed here.
"What we have said, Judge, is that public employees, public teachers, earn sometimes it is referred to allotments and sometimes it is referred to allocations, that they were receiving allocations that they had earned before the PEEHIP board decided to take that away from them and to set up different classes of individuals and treat them differently and to take their property right without due process. That's what we have said from the beginning."
Further, in their brief on appeal, the plaintiffs state:
"The controlling question in this litigation is not the amount of premiums Plaintiffs are charged for family coverage or whether Plaintiffs' pay the same amount of premiums paid by other educators. To be absolutely clear, this case does not in any way involve the amount of premiums charged or paid.[5]"_____________
*268 "[5] To Plaintiffs' knowledge, the PEEHIP Board has not manipulated the premium rates in a constitutionally impermissible manner-only Plaintiffs' right to utilize their earned insurance allocation."
Appellees brief, at 11-12.
It is true that in their complaint in this case, as discussed above, the plaintiffs appeared to challenge the fact that, before the 2010 policy changes, they had no "out-of-pocket costs for health insurance" and now, after the changes, they have to pay a family-coverage premium. However, given the statements by the plaintiffs in the trial court and on appeal, it appears that, either by waiver or abandonment, they no longer wish to pursue such a claim. Although the bulk of the defendants' arguments on appeal address the constitutionality of the premiums, we see no need to address it now, because this portion of the question certified by the trial court no longer addresses a controlling question of law in this case.
B. Constitutionality of the denial of an allotment
In discussing the second issue in the certified question, we must address the parties' arguments as to the nature of the "allocation" or "allotment" in this case. The defendants argue that the plaintiffs are not actually entitled to any sort of allotment of a specific dollar amount to purchase insurance coverage and, because of this, the plaintiffs' constitutional claims must fail. Specifically, the legislature sets the amount of the employer contribution that the public-education employers must pay for each employee. See § 16-25A-8(b), Ala. Code 1975 (providing that the legislature sets the employer-contribution rate after the PEEHIP Board certifies to the governor and the legislature the amount necessary to fund coverage). The employer contribution is not actually given to PEEHIP participants for them to use to purchase insurance; instead, it is paid to PEEHIF. § 16-25A-8(f), Ala. Code 1975. According to the defendants, the employer contribution must be paid regardless of what health-insurance option a public-education employee selects, even if the employee does not enroll in PEEHIP at all. This, the defendants contend, illustrates that no dollar amount is allotted for public-education employees to use to purchase insurance.
However, the plaintiffs produced documents issued by PEEHIP-certain issues of the PEEHIP Advisor newsletter and copies of the PEEHIP Member Handbook for various years-that show that PEEHIP insurance-availability options were explained to PEEHIP participants in terms of "allocations" or "state allocations." As late as 2014, the PEEHIP Member Handbook indicated that PEEHIP participants "earned" allocations and that those "state allocation[s] will pay in full" optional coverage plans, or that a PEEHIP participant could "apply the state allocation" for other coverage plans. Further, the plaintiffs note that the August 2010 PEEHIP Advisor newsletter stated that, after the 2010 policy changes, public-education employees married to other public-education employees must use both "allocations" if purchasing family coverage, and that one of the allocations they earned could not be used for optional plans. Finally, the 2015-2016 PEEHIP Member Handbook-issued after this action was filed-omits mention of allocations completely. It describes employees as now earning months of "coverage," and the section of the handbook previously discussing "allocations" now refers to "employer contributions."
The defendants, on the other hand, explain that the allocations or allotments *269 were not the actual "employer contribution" being given to public-education employees for their use; that money was always paid to the PEEHIF no matter what a public-education employee elected to do. Instead, according to the defendants, the term "allocations" simply described "eligibility for coverage." By law, the defendants say, PEEHIP participants did not receive the money, a fact they say is confirmed by the statute, and, they say, any statement implying the contrary in the PEEHIP handbooks or newsletters would not trump the statute.[8]
We agree with the defendants that the allocations or allotments did not represent a sum of money PEEHIP participants were entitled to receive to purchase insurance-all funds are instead paid by public-education employers to PEEHIF. Rather, the "allocations" simply represented a public-education employee's monthly eligibility for insurance coverage. Nevertheless, this does not end the analysis. It appears from the materials before us that public-education employees "earned" or were "eligible" for monthly coverage and could use that benefit, at their option, to select certain coverage alternatives. Whether described as allotments, allocations, or units of monthly eligibility, each public-education employee accrues a monthly insurance benefit. Each public-education employee may use this benefit to purchase family coverage. But, as the plaintiffs allege and the materials before the Court confirm, when two PEEHIP participants are married to each other, they may not use one of their accrued benefits to purchase family coverage-they must use both. When compared to individual PEEHIP participants-where only one accrued monthly benefit can be used to purchase family coverage-one spouse is effectively denied the monthly insurance benefit that accrued. In such a case, it does not matter that the money represented by the employer contribution is paid to PEEHIF-one spouse is denied the benefit of the coverage he or she earned. It is true that, ultimately, the premium paid for the family coverage is the same. Nevertheless, the benefits provided are different-the couple is treated as though they receive only one monthly eligibility benefit instead of two.
The defendants' arguments on appeal do not address the constitutionality of the purported denial of this monthly coverage benefit. Instead, the defendants focus on whether the plaintiffs were entitled to an allocation of specific funds. It is true that, both in the trial court and on appeal, the plaintiffs at times refer to the allocations as something granting them a specific dollar amount to use to purchase insurance, which, as discussed above, the defendants have shown is not the case. However, the plaintiffs also challenge the denial or loss of the benefit provided to one of the spouses. This, we believe, is the controlling question of law in this case, and it is not addressed by either the certified question or in the defendants' brief.
When a trial court fails to correctly identify the controlling question of law, a Rule 5 permissive appeal is due to be dismissed. BE & K, Inc. v. Baker, 875 So.2d 1185, 1189 (Ala. 2003). See also Continental Cas. Co. v. Pinkston, 941 So.2d 926 (Ala. 2006) (dismissing a Rule 5 permissive appeal where the trial court's order and appellant's brief were based on an incorrect assumption and did not address the controlling issue). After thoroughly reviewing the record and the arguments presented *270 by the parties, we conclude that the permission to appeal under Rule 5, Ala. R. App. P., was improvidently granted, and we dismiss the appeal. See Hughes Beverage Co. v. Hughes, 861 So.2d 1087, 1088 (Ala. 2003).
APPEAL DISMISSED.
Stuart, C.J., and Parker, Wise, Bryan, and Sellers, JJ., concur.
Murdock, J., concurs in the result.
Bolin, J., dissents.
Main, J., recuses himself.

As discussed below, this Court in RSA I ordered the dismissal of several of the original defendants in the underlying action.

In accordance with the allegations in the complaint, this policy is referred to in RSA I as "the 2009 policy." 182 So.3d at 530-31. Subsequent pleadings filed after RSA I revealed that the policy changes were implemented in 2010.

As to this point, the complaint states: "[R]ather than having no out-of-pocket costs for health insurance, the couple has to contribute [a family-coverage premium] each month for health insurance."

Specifically, after the 2010 policy changes, all PEEHIP participants pay a $15 premium for individual coverage and a $117 premium for family coverage. PEEHIP participants who are married to another PEEHIP participant also each have to pay the $15 monthly premium for individual coverage as well as the $117 premium for family coverage if they wish to cover dependents. Thus, according to the defendants, the plaintiffs are now paying the same premium for family coverage as individual public-education employees.

The defendants maintained that the "Plaintiffs' claims are subject to rational basis review because they do not involve a suspect classification or a fundamental right."

It appears that, although the plaintiffs used the term "allotment" in their complaint, the PEEHIP documents use the term "allocation" to refer to the same item. The terms are used interchangeably in the record and the briefs.

In their opposition, the plaintiffs did not challenge the defendants' arguments regarding their freedom-of-association claim. Further, they advance no argument regarding it on appeal. We thus conclude that the plaintiffs have abandoned this claim.

It appears that the term "allocation" was used because, before 1983 and the creation of PEEHIP, public-education employees were actually allocated a sum of money to use to purchase insurance coverage on their own.